UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
G&G CLOSED CIRCUITS EVENTS, LLC,

                Plaintiff,

      -against-

MIGUEL LOPEZ, individually and d/b/a
MIGUEL'S BARBERSHOP, and
MIGUEL BARBER SHOP CORP.,
d/b/a MIGUEL'S BARBERSHOP,

                Defendants.
----------------------------------------------------------X

REPORT AND
RECOMMENDATION
20 CV 2939 (ENV)(RML)

LEVY, United States Magistrate Judge:

        By order dated April 8, 2021, the Honorable Roslynn R. Mauskopf, United States District Judge,[1] referred plaintiff's motion for default judgment against defendants Miguel Lopez ("Lopez"), individually and d/b/a Miguel's Barbershop and Miguel Barber Shop Corp., an unknown business entity d/b/a Miguel's Barbershop ("Miguel's Barbershop") to me for report and recommendation. For the reasons set forth below, I respectfully recommend that plaintiff's motion be granted in part and denied in part.

## BACKGROUND AND FACTS

        Plaintiff G&G Closed Circuit Events, LLC ("plaintiff") brought this action on July 2, 2020, alleging violations of the Federal Communications Act of 1934 (the "FCA"), codified as amended, 47 U.S.C. §§ 553 and 605. (Complaint, dated July 2, 2020 ("Compl."), Dkt. No. 1.)[2] Plaintiff seeks statutory damages, enhanced damages, pre- and post-judgment

---

[1] On July 12, 2021, this case was reassigned to the Honorable Eric N. Vitaliano, United Stated District Judge.
[2] While plaintiff asserts claims under both sections 553 and 605 in its complaint, in keeping with the law in this Circuit, it pursues only its claim under section 605 in this motion. (Plaintiff's
                                                                                                                                                           (Continued . . .)

interest, attorney's fees, and costs. (Id. ¶ 43; Plaintiff's Memorandum of Law in Support of Application for a Default Judgment, dated Dec. 1, 2020 ("Pl.'s Mem."), Dkt. No. 9-1, at 4-6, 10-11.)

Plaintiff, a California corporation, alleges that it holds the exclusive nationwide commercial distribution rights to the September 16, 2017 telecast, including undercard or preliminary bouts, of the Gennady Golovkin versus Saul Alvarez, IBF World Middleweight Championship Fight Program (the "Program"). (Compl. ¶¶ 6, 17.) Plaintiff also alleges that it entered into sublicensing agreements with various commercial establishments to broadcast the Program. (Id. ¶ 18.) For a fee, plaintiff would either give those establishments the necessary equipment to unscramble the Program's encrypted signal or authorize those establishments' cable or satellite providers to unscramble the signal. (Id. ¶ 23; Affidavit of Nicolas G. Gagliardi, sworn to Nov. 15, 2020 ("Gagliardi Aff."), Dkt. No. 9-2, ¶ 11.) The sublicensing fee for the Program would have depended on the establishment's capacity. (Gagliardi Aff. ¶ 8) (citing "Rate Card," annexed as Ex. 2 to Gagliardi Aff.) Plaintiff states that an establishment like Miguel's Barbershop would have had to pay a $2,500 sublicensing fee to broadcast the Program. (Id.)

At the time of the alleged violation, Miguel's Barbershop was a commercial establishment located at 8821 37th Avenue in Jackson Heights, New York. (Compl. ¶ 8.) At all relevant times, Lopez was identified as Owner and Principal of Miguel Barbershop Corp., which owned and operated Miguel's Barbershop. (Id. ¶ 9.) Plaintiff alleges that it never authorized

---

Motion for Default Judgment, dated Dec. 1, 2020, Dkt. No. 9, ¶ 3); Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (collecting cases for the proposition that "the law in this Circuit is clear that plaintiff may recover under only one of the statutes."). Because section 605 "allows for a greater recovery than does [section] 553," courts should award damages pursuant to section 605 instead of section 553, where both might apply. Pizzeria y Pupuseria Santa Rosita, 804 F. Supp. 2d at 114.

Miguel's Barbershop, or Lopez individually, to broadcast the Program. (Gagliardi Aff. ¶ 3.) Plaintiff further alleges that on the night of the Program, Miguel's Barbershop unlawfully intercepted, received, and exhibited the Program on one screen with approximately ten people in attendance and sold alcoholic and non-alcoholic beverages to its patrons. (Compl. ¶¶ 24-25; Pl.'s Mem. at 2; Affidavit of Cosmo Lubrano, sworn to Sept. 30, 2017 ("Lubrano Aff."), attached as Ex. 5 to the Declaration of Joseph Loughlin, Esq., dated Dec. 1, 2020 ("Loughlin Decl."), Dkt. No. 9-3.)

Despite being properly served, see Affidavit of James Boland, sworn to July 27, 2020, Dkt. No. 5; Affidavit of Robert Urena, sworn to Aug. 20, 2020, Dkt. No. 6, defendants have not appeared or otherwise defended this action. Upon plaintiff's application, the Clerk of the Court noted defendants' defaults pursuant to Federal Rule of Civil Procedure 55(a) on October 1, 2020. (Clerk's Entry of Default, dated Oct. 1, 2020, Dkt. No. 8.)

On December 1, 2020, plaintiff moved for default judgment against both defendants. (Plaintiff's Motion for Default Judgment, dated Dec. 1, 2020, Dkt. No. 9.) Plaintiff seeks a total of $30,000 in damages, consisting of $7,500 in statutory damages and $22,500 in enhanced damages. (Pl.'s Mem. at 5.) Plaintiff additionally seeks pre- and post-judgment interest as well as attorney's fees and costs. (Id. at 5, 10.) On April 8, 2021, Judge Mauskopf referred plaintiff's motion to me for report and recommendation. (Order Referring Motion, dated Apr. 8, 2021.)

## DISCUSSION

### I. Default Judgment

A defendant's default "is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155,

158 (2d Cir. 1992).  Once a default is entered, the court "is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court then must "determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law."  Id.  Once liability has been established, the "decision whether to enter default judgment is committed to the district court's discretion."  Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015).  The court need not conduct a hearing to determine damages if it can rely on detailed affidavits and documentary evidence to do so.  House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010).

    A.  Liability

Section 605(a) of the FCA provides, in relevant part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person."  47 U.S.C. § 605(a).  Courts in the Second Circuit have applied section 605 to the theft of cable communications.  Joe Hand Promotions, Inc. v. Beer Closet, Inc., 17 CV 3735, 2018 WL 4138938, at *2 (E.D.N.Y. July 27, 2018) (collecting cases), report and recommendation adopted, 2018 WL 4119548 (E.D.N.Y. Aug. 29, 2018).

If a plaintiff successfully alleges that an establishment violated section 605, it may seek to impose liability against individual defendants under theories of vicarious liability or contributory infringement.  See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F. 3d 955, 971 (2d Cir. 1997).  To establish vicarious liability, a plaintiff must show that the defendant had a "right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials."  Id. (alterations omitted) (quoting Shapiro, Bernstein

4

& Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)). To establish contributory infringement, a plaintiff must show that the defendant "authorized the infringing use." Id. (alteration omitted) (quoting Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 437 (1984)).

1. Miguel's Barbershop

Plaintiff's allegations establish liability as to Miguel's Barbershop under section 605(a). Plaintiff held exclusive closed-circuit distribution rights to the Program. (Compl. ¶ 17.) Miguel's Barbershop showed the Program on September 16, 2017, without having entered into a licensing agreement with plaintiff to do so. (Id. ¶¶ 24, 29.) "Courts in this jurisdiction have consistently found that such allegations are sufficient to establish liability under Section 605(a)." J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (collecting cases). Therefore, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to Miguel's Barbershop.

2. Lopez

Plaintiff also seeks to hold Lopez liable under section 605(a) in his capacity as principal and owner of Miguel's Barbershop. (Compl. ¶ 9.) Plaintiff states that based on information and belief Lopez "had the right and ability to supervise" as well as "the obligation to supervise the activities of Miguel's Barbershop" on September 16, 2017. (Id. ¶ 10-11.) Plaintiff alleges that "on Saturday, September 16, 2017 . . . Lopez specifically directed the employees of Miguel's Barbershop to unlawfully intercept, receive and broadcast Plaintiff's Program at Miguel's Barbershop or intentionally intercepted, and/or published the Program at Miguel's Barbershop himself." (Id. ¶ 12.) Plaintiff also alleges that Lopez "had an obvious and direct financial interest in the activities of Miguel's Barbershop . . . ." (Id. ¶ 13.)

Apart from information provided in the motion for default judgment, there is no sworn testimony or additional documentation to provide evidentiary support for the alleged control the individual defendant had over the actions of Miguel's Barbershop on the night of September 16, 2017. Despite the fact that plaintiff's investigator Lubrano visited Miguel's Barbershop during the Program and interacted with an individual on the premises at that time, he adduced no evidence that Lopez was present for or played any role in the infringing activities. (See Lubrano Aff.) Furthermore, the affidavit does not support a finding that Lopez had an obvious and direct financial interest, such as a cover charge.[3] (Id.)

Because defendants have defaulted in this action, plaintiff's allegations remain unchallenged and must be accepted as true. Greyhound Exhibitgroup, Inc., 973 F.2d at 158. However, the Supreme Court has advised that "formulaic recitation of the elements of a cause of action" is insufficient to establish a prima facie case. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Courts in this district have found that allegations similar to the one in this case are 'nothing more than a formulaic recitation of the elements of a cause of action. . . .'" J & J Sports Prods., Inc. v. Gomez, No. 18 CV 5119, 2019 WL 6388805, at *5 (E.D.N.Y. July 11, 2019) (quoting J & J Sports Prods., Inc. v. Orellana, No. 18 CV 2052, 2019 WL 1177719, at *4 (E.D.N.Y. Mar. 13, 2019)) (collecting cases), report and recommendation adopted in part, rejected in part, 2019 WL 4744229 (E.D.N.Y. Sept. 29, 2019) ("The Court agrees with the line

---

[3] While the Complaint alleges that "[o]n information and belief, on Saturday, September 16, 2017 . . . Miguel's Barbershop sold alcoholic and non-alcoholic beverages to its patrons[,]" Compl. ¶ 25, the investigator's affidavit states that he "ordered a NA from the bartender whose name was male and is described as barber, hispanic, [sic] wearing a black shirt and jeans." (Lubrano Aff.) Within the context of the affidavit, I understand "NA" as being used to indicate "not applicable." (See id.) Because the affidavit is merely a boilerplate form, it is unclear whether the investigator simply did not order a drink or there were no drinks being sold. Even if drinks were being sold, based on the small number of attendees I do not find Lopez would have reaped a substantial financial gain compared to similar contexts where such a broadcast is screened at a restaurant or bar.

6

of cases cited and analyzed . . . which find conclusory allegations, like Plaintiff's in this action, insufficient to state a claim of individual liability.").

Furthermore, plaintiff is seeking to hold Lopez responsible for the broadcast by virtue of his position as the owner and principal of Miguel's Barbershop. (Compl. ¶ 9.) But corporate officers are generally not liable for the wrongful acts of the corporation "unless they participate in or have knowledge of such acts." Garden City Boxing Club, Inc. v. Paquita's Café, Inc., 06 CV 6953, 2007 WL 2783190, at *2 (S.D.N.Y. Sept. 26, 2007). I cannot infer from Lopez's title that he was "'positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation.'" Gomez, 2019 WL 6388805, at *5 (quoting J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15 CV 3771, 2017 WL 933079, at *3 (E.D.N.Y. Mar. 8, 2017)). See also J & J Sports Prods., Inc. v. Daley, No. 06 CV 238, 2007 WL 7135707 (E.D.N.Y. Feb. 15, 2007) (holding that "[t]here is no evidence that Daley had any knowledge that the Event would be exhibited…[or] that he had any control over what was being displayed on the television . . . ." (internal quotations omitted)).

Therefore, I find that Lopez should not be held liable under section 605(a). Accordingly, I respectfully recommend that plaintiff's motion for default judgment be denied with respect to Lopez.

### II. Damages

Unlike liability, allegations regarding damages are not deemed to be admitted in the context of a default judgment. Greyhound Exhibitgroup Inc., 973 F.2d at 158. Plaintiff bears the burden of establishing that it is entitled to recovery. "To determine the appropriate amount of damages, courts have the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing." J & J Sports Prod., Inc. v. Newhouse, No. 06 CV 478, 2007 WL

1656283, at *2 (E.D.N.Y. June 4, 2007) (quotations and citation omitted).  See also Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989).  Plaintiff seeks statutory damages, enhanced damages, as well as pre- and post-judgment interest.  (Pl.'s Mem. at 5.)

    A. Statutory Damages

Section 605(e)(C)(i)(II) of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(C)(i)(II).  Plaintiff requests statutory damages of $7,500.[4]  (Pl.'s Mem. at 5.)

The amount of a statutory damages award lies in the sound discretion of the district court.  See, e.g., LX Food Grocery, 2016 WL 6905946, at *4 (citing Time Warner Cable of N.Y.C. v. Sanchez, No. 02 CV 5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003)).  "The factors to be considered in determining the appropriate amount of damages include the "pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose."  Gomez, 2019 WL 6388805 at *6 (quoting Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989)); see also Entertainment by J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

Courts in the Second Circuit typically use either a "flat-fee" or a "per-person" method to determine statutory damages under section 605(e)(C)(i)(II).  See, e.g., J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15 CV 3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017).  Under the "flat-fee" method, damages are equal to the amount that the defendants

---

[4] Plaintiff may elect to request either statutory or actual damages under Section 605.  See 47 U.S.C. § 605(e)(3)(C).

8

would have paid for authorization to broadcast the event lawfully. See id. Under the "per-person" method, damages are equal to the amount the patrons would collectively have paid to view the event in their homes. See id. "[T]he higher of the two amounts is generally awarded." Id.

Plaintiff requests that this court not utilize either of these two methods to determine statutory damages. (Pl.'s Mem. at 6.) First, plaintiff argues that basing the statutory damages on the licensing fee "under values the Program and fails to compensate Plaintiff adequately." (Id.) Plaintiff next argues that basing a statutory award on presumed actual losses conflates statutory damages with actual damages under Section 605. (Id.) Finally, plaintiff contends that awarding the equivalent of the licensing fee "would create a perverse incentive for an individual to attempt to break the law" and therefore not sufficiently deter the conduct at hand. (Id. at 7-8.) Plaintiff's counsel has previously raised these arguments in a similar case within this district. See Gomez, 2019 WL 4744229, at *7-8. There, the district court rejected each argument. Id. at *9. I also find plaintiff's arguments unpersuasive.

I respectfully recommend that this court use the methodologies typically used to calculate statutory damages in this Circuit. Defendant Miguel's Barbershop would have paid $2,500 for authorization to broadcast the program lawfully. (Gagliardi Aff. ¶ 8.) While plaintiff has not provided a per-person valuation, courts in this district assume a $54.95 residential fee when one is not otherwise stated. See J & J Sports Prod., Inc. v. McAdam, No. 14 CV 5461, 2015 WL 8483362, at *4 (E.D.N.Y. Dec. 9, 2015) (collecting cases). Multiplying this number by the approximately ten people present on the night of broadcast, see Lubrano Aff., results in an award of $549.50, which is below the statutory minimum. Taking the greater of these two amounts, I respectfully recommend that plaintiff be awarded $ 2,500 in statutory damages. I

further note that since there has been no evidence of repeat violations and no evidence that Miguel's Barbershop exhibited the match for commercial gain, an award of $2,500 constitutes sufficient deterrence.  See, e.g., Gomez, 2019 WL 4744229, at *10 (finding that because there was a "dearth of any evidence establishing that Tony's Barbershop profited from this violation" awarding the amount of the licensing fee as statutory damages was "just" and a "potent deterrent").

  B. Enhanced Damages

  Section 605(e)(3)(C)(ii) of the FCA permits the court, in its discretion, to increase the award of damages up to $100,000 when it finds a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ."  47 U.S.C. § 605(e)(3)(C)(ii).  Plaintiff requests enhanced damages of $22,500.  (Pl.'s Mem. at 5.)

  The fact that Miguel's Barbershop displayed the Program without authorization establishes the willfulness of its conduct.  See J & J Sports Prods., Inc. v. Tacqueria Juarez Rest., Inc., No. 17 CV 4158, 2018 WL 2056181, at * 6 (E.D.N.Y. Mar. 16, 2018) ("[Defendant] could not have involuntarily intercepted and exhibited the Event given that the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed."), report and recommendation adopted, 2018 WL 2048370 (E.D.N.Y. May 2, 2018); Time Warner Cable of New York City v. Googie's Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously[.]").  Courts use five factors to determine whether a willful violation warrants the imposition of enhanced damages, including whether there is evidence of (1) repeated violations; (2) significant actual damages suffered by the plaintiff; (3) substantial unlawful monetary gains by defendant; (4) defendant's advertising of the event; and (5) defendant's collection of a cover charge or premiums for food and drinks.  J &

J Sports Prods., Inc. v. Chulitas Enter. Corp., No. 12 CV 3177, 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014) (quoting J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010)).

In this case, plaintiff has not offered evidence that any of these conditions have been met. Plaintiff does not allege that Miguel's Barbershop committed repeated violations. Plaintiff provides no evidence of actual damages beyond the failure to pay for a license, which is already factored into plaintiff's statutory damages award. See LX Food Grocery, 2016 WL 36905946, at *5. Plaintiff provides no evidence of substantial unlawful monetary gains; nor does it provide any evidence that Miguel's Barbershop advertised the broadcast. Plaintiff's investigator reported that no cover fee was charged. (See Lubrano Aff.) And, while plaintiff alleges in the complaint that beverages were sold during the broadcast, the investigator's affidavit does not clearly indicate whether beverages were even being served let along sold. (See id.)

Courts have declined to award enhanced damages where there was insufficient evidence that the conditions had been met. See, e.g., J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with forty patrons where plaintiff failed to show "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [or] defendant's charging a cover charge or charging premiums for food and drinks" (internal quotation marks and citation omitted)); J & J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 in statutory damages and zero enhanced damages for a barbershop in which five patrons were

11

present because there was no evidence that defendants exhibited the Event for commercial advantage); J & J Sports Prods., Inc. v. Monte Limar Sports Bar, No. 15 CV 3771, 2017 WL 933079, at *5 (E.D.N.Y March 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damaged because, although there were 100 patrons present, the court found no evidence of significant profit or commercial advantage); LX Food Grocery, Inc., 2016 WL 6905946, at *5 (awarding $2,200 in statutory damages and zero in enhanced damages in which the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit).  While I acknowledge that it is likely more difficult to obtain evidence relevant to the enhanced statutory damages factors in a default judgment, the burden nevertheless remains on plaintiff to establish damages to a reasonable certainty.  I find that plaintiff has not met its burden and I respectfully recommend that no enhanced statutory damages be awarded.

      C.  Pre- and Post-Judgment Interest

Plaintiff also seeks pre- and post-judgment interest.  The Second Circuit "has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization when the awards were fair, equitable, and necessary to compensate the wronged party fully."  Garden City Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2016) (internal quotation marks and citations omitted).  However, courts have generally declined to award pre-judgment interest for FCA violations.  See, e.g., LX Food Grocery, 2016 WL 6905946, at *5 (citing J & J Sports Prods., Inc. v. La Ruleta, No. 11 CV 4422, 2012 WL 3764062, at *5 (E.D.N.Y. Aug. 7, 2012)).  I respectfully recommend adhering to this precedent and denying plaintiff's request for pre-judgment interest.

Plaintiff is, however, entitled to post-judgment interest on damages from the date of entry of judgment until the date the judgment is paid in full.  28 U.S.C. § 1961(a).  Post-

judgment interest accrues at the federal statutory rate until the judgment is paid. Id.; see also Joe Hand Prods., Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *14 (E.D.N.Y. May 29, 2013); J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at * 5 (E.D.N.Y. Nov. 7, 2011).

    D. Attorney's Fees and Costs

Section 605(e)(3)(B)(iii) of the FCA requires courts to "direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff asks for permission to submit a motion for costs and attorney's fees thirty days from the date of entry of judgment. (Pl.'s Mem. at 10.) Because plaintiff is entitled to recover full costs and reasonable fees under the statute, I recommend that plaintiff be permitted to make its request in a separate motion, with supporting documentation.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to its claim against Miguel's Barbershop under section 605 of the FCA but denied as to Lopez. I further recommend that plaintiff be awarded $2,500 in statutory damages and no enhanced damages, for a total of $2,500 plus post-judgment interest. Additionally, as requested, I recommend that plaintiff be given leave to file a motion for attorney's fees and costs within thirty days from the date this judgment becomes final. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Vitaliano and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Plaintiff is directed to serve copies of

this Report and Recommendation on the defaulting defendants by regular mail, and to file proof of service within three days of the date of this Report and Recommendation.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      November 8, 2021